State of Nebraska, Appellee, v. Dennis L. Thomte,
Appellant.
413 N.W.2d 916

Filed October 16, 1987.   No. 87-052.

James E. Schaefer, for appellant.

Robert M. Spire, Attorney General, and Yvonne E. Gates, for appellee.

Boslaugh, C.J., Pro Tem., White, Hastings, Caporale, Shanahan, and Grant, JJ., and Colwell, D.J., Retired.

Per Curiam.

The appellant, Dennis L. Thomte, was charged with operating a motor vehicle while he was under the influence of alcohol or when he had ten-hundredths of 1 percent or more by

weight of alcohol in his body fluid as shown by chemical analysis of his blood, breath, or urine, in violation of Neb. Rev. Stat. § 39-669.07 (Cum. Supp. 1986). Having been convicted of that charge in the county court for Douglas County, Thomte appealed his conviction to the district court for Douglas County, which affirmed the county court's judgment of conviction.

At approximately 11 p.m. on April 25, 1986, Sgt. Timothy Cavanaugh was driving his cruiser southbound in moderate traffic on Interstate 680 within Omaha, which highway has two marked lanes for southbound traffic. Cavanaugh, driving in the left lane, approached other southbound vehicles in the right lane. As Cavanaugh began to overtake a Cadillac, which was being followed by other vehicles, the Cadillac made a sharp weave from right to left within the right lane but did not cross into the left lane occupied by Cavanaugh's cruiser. Cavanaugh reduced his cruiser speed to approximately 45 miles per hour and pulled into the right lane, ahead of traffic which was still following the Cadillac. During his observation of the Cadillac as it traveled 16 blocks, or a little over 1 mile, on I-680, Cavanaugh saw the Cadillac again weave within the right lane of traffic and, as the Cadillac was about to exit from the Interstate, activated the cruiser's red rotating lights. The Cadillac pulled to the right shoulder of the road and stopped. Cavanaugh parked his cruiser directly behind the Cadillac and then approached the vehicle, where he found Thomte inside and alone. Illumination at that point was provided by Cavanaugh's flashlight and street lamps on the Interstate. When he arrived at the Cadillac, Cavanaugh asked for Thomte's driver's license and the vehicle registration. Thomte told the officer that he was tired, and the officer observed that Thomte's "speech was very slurred and thick-tongued, mumbled, if you will. And I noticed a moderate odor of alcohol" on Thomte's breath.

Cavanaugh asked Thomte to get out of the Cadillac and perform some field sobriety tests. When Thomte said he knew the alphabet, he attempted to recite the alphabet, but, according to Cavanaugh: "He got through the letter 'N', with no problems, and then he just jumbled the rest, so I couldn't

make out what letters he was saying. So I asked him to repeat. He got to the letter, 'H', and just stopped." Thomte was then asked to perform a balance test, where Thomte stood on his left leg and, while so standing, would attempt to swing his right leg forward and backward. Thomte lost his balance during three unsuccessful attempts at such balance test. In another field sobriety test, the finger-to-nose test, where the subject extends both arms and then attempts to touch his nose with the index finger of each hand, Thomte satisfactorily touched his nose with the index finger of his left hand but missed his nose in the attempt with his right hand. Because it started to rain, Thomte and Cavanaugh got into the cruiser, and Cavanaugh summoned another officer to administer an "Alco-Sensor" test. Shortly thereafter, an Officer Siebken arrived and administered the Alco-Sensor test. Cavanaugh placed Thomte under arrest and transported him in the cruiser to Central Police Station for the purpose of a breath test through an Intoxilyzer Model 4011AS, which was administered by a police department technician.

Cavanaugh testified that, during his $5^1/_2$ years on the police force, he had observed the conduct of people who had consumed alcohol, had made several hundred arrests for drunk driving, and had made arrests for many offenses other than drunk driving committed by persons who had consumed alcohol. Also, Cavanaugh testified concerning Thomte's physical appearance when he encountered Thomte on the Interstate and Thomte's inability to perform most of the field sobriety tests. During further testimony, Cavanaugh related events at the police station after Thomte had been advised of his *Miranda* rights. As testified by Cavanaugh, Thomte said he had been drinking since 6 p.m. and had consumed three glasses of wine. Cavanaugh expressed his opinion that Thomte was under the influence of alcohol at the time the officer stopped the Thomte vehicle on the Interstate. On cross-examination, Cavanaugh testified that Thomte had stated that he was taking medication, Calan. The technician who had administered the Intoxilyzer test testified that the Intoxilyzer's digital readout was ".135."

Thomte testified that he had three or four glasses of wine but had ceased drinking any alcohol at least $1^1/_2$ hours before he

was arrested by Cavanaugh. Thomte generally disagreed with Cavanaugh's description of events on the Interstate leading up to the arrest, and testified that Calan contains acetone. Thomte also testified that he was not under the influence of alcohol when stopped by Cavanaugh. In rebuttal, the State recalled the technician who administered the Intoxilyzer test, and the technician testified that any acetone would cause the Intoxilyzer to cancel the test being administered if acetone is present in the breath sample sufficient to affect the test. At the conclusion of the evidence, the court stated: "The Court finds the defendant guilty." On appeal to the district court, the county court's judgment was affirmed. Thomte now appeals to this court.

Thomte alleges that the trial court erred in (1) not finding that the investigatory stop occurred without probable cause; (2) not finding that the search and seizure was unreasonable and without probable cause; (3) not finding that there was insufficient evidence to find Thomte guilty beyond a reasonable doubt; (4) admitting the results of the preliminary breath test; and (5) accepting the results of the breath test without adjusting it so as to give Thomte the benefit of the margin of error.

Thomte first argues that the initial stop of his vehicle was without probable cause. However, Thomte's roadside detention is more accurately classified as a stop and search situation subject to the guidelines pronounced in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), where the U.S. Supreme Court said: "[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Terry v. Ohio, supra* at 22. See, also, *State v. Pierce and Wells*, 215 Neb. 512, 340 N.W.2d 122 (1983); *State v. Ebberson*, 209 Neb. 41, 305 N.W.2d 904 (1981). An investigatory stop must be justified by an objective manifestation that the person stopped has been, is, or is about to be engaged in criminal activity. *United States v. Cortez*, 449 U.S. 411, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981); *Fulmer v. Jensen*, 221 Neb. 582, 379 N.W.2d 736 (1986); *State v. Ebberson, supra.*

Police officers must have a particularized and objective basis for suspecting the person stopped of criminal activity. The assessment of the totality of circumstances includes all of the objective observations and considerations, as well as the suspicion drawn by a trained and experienced police officer by inference and deduction that the individual stopped is or has been or is about to be engaged in criminal behavior. See, *Brown v. Texas*, 443 U.S. 47, 99 S. Ct. 2637, 61 L. Ed. 2d 357 (1979); *Delaware v. Prouse*, 440 U.S. 648, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979).

*State v. Ebberson, supra* at 44-45, 305 N.W.2d at 907. Sergeant Cavanaugh testified he observed Thomte's vehicle twice weaving within its lane of traffic. We hold that a vehicle weaving in its own lane of traffic provides an articulable basis or reasonable suspicion for stopping a vehicle for investigation regarding the driver's condition in operating the weaving vehicle. Such a circumstance supports an officer's justifiable belief that the weaving vehicle is being driven by a person who is under the influence of alcohol, in violation of the drunk driving statute, § 39-669.07. Courts in other jurisdictions have reached the same conclusion regarding an officer's observation of a vehicle weaving within its own lane of traffic. See, *State v. Superior Court*, 149 Ariz. 269, 718 P.2d 171 (1986); *State v. Ellanson*, 293 Minn. 490, 198 N.W.2d 136 (1972); *State v. Dorendorf*, 359 N.W.2d 115 (N.D. 1984); *State v. Bailey*, 51 Or. App. 173, 624 P.2d 663 (1981). Sergeant Cavanaugh had " 'a particularized and objective basis for suspecting the person stopped of criminal activity.' " *State v. Daniels*, 220 Neb. 480, 482, 370 N.W.2d 179, 181 (1985). The initial stop of Thomte's car was justified, and, therefore, his first assignment of error is of no merit.

Thomte next argues that the field sobriety tests constituted a search and seizure and were conducted without probable cause. Sergeant Cavanaugh testified, however, that appellant's eyes were glazed, his speech was slurred, and Thomte had a moderate odor of alcohol about him. Cavanaugh's observations of Thomte were no different from any view of Thomte's general physical characteristics which are "in the

plain view of an officer who has a right to be in the position to have that view." *Harris v. United States*, 390 U.S. 234, 236, 88 S. Ct. 992, 19 L. Ed. 2d 1067 (1968). See *United States v. Dionisio*, 410 U.S. 1, 93 S. Ct. 764, 35 L. Ed. 2d 67 (1973). Relying on *People v. Carlson*, 677 P.2d 310 (Colo. 1984), Thomte argues that roadside sobriety testing constitutes a full search and seizure and therefore must be supported by probable cause. Other jurisdictions, however, have held that administering roadside sobriety tests is more analogous to a limited *Terry* stop than to a formal arrest and may be justified by an officer's reasonable suspicion, based on specific articulable facts, that the driver is intoxicated. See, *State v. Superior Court, supra; Oregon v. Niles*, 74 Or. App. 383, 703 P.2d 1030 (1985). Cf. *State v. Stevens*, 394 N.W.2d 388 (Iowa 1986) (cases cited therein). Under the circumstances, we need not decide whether roadside sobriety tests must be supported by probable cause, because even under the more stringent standard applied in *People v. Carlson, supra*, namely, that probable cause is required for field sobriety tests, probable cause existed in the present case. In *State v. Halligan*, 222 Neb. 866, 387 N.W.2d 698 (1986), this court held that an officer's observations of a motorist's bloodshot eyes, slurred speech, and breath with the odor of alcohol constituted probable cause for a valid warrantless arrest for drunk driving. Since we have decided that the initial stop of Thomte was based on reasonable suspicion, the officer's additional observations of Thomte constituted probable cause for believing that appellant was driving while under the influence of alcohol, and, therefore, the sobriety tests were reasonable under the circumstances. Thomte's second assignment of error is without merit.

In connection with his third assignment of error, namely, that there is insufficient evidence to support his conviction, Thomte argues that the trial court erred in permitting Sergeant Cavanaugh to express his opinion as to whether or not Thomte was intoxicated. Thomte objects on the grounds that Cavanaugh lacked sufficient foundation for his opinion and, further, that the officer's opinion is not supported by the evidence. Cavanaugh testified, however, that he had observed the conduct of people who had consumed alcohol and that in

his 5 1/2 years as an officer he had made several hundred drunk driving arrests. His testimony was based on personal observations of Thomte. We have often held that a police officer, as a nonexpert witness, may testify regarding his or her opinion about another's state of intoxication, provided the officer has made detailed observations upon which the opinion is based. See, *State v. Warnke*, 221 Neb. 625, 380 N.W.2d 241 (1986); *State v. Daniels, supra; State v. Johnson*, 215 Neb. 391, 338 N.W.2d 769 (1983). The opinion testimony of Sergeant Cavanaugh was properly received.

Thomte maintains there was insufficient evidence to support his conviction.

> "[I]n determining the sufficiency of the evidence to sustain a conviction, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the finder of fact. The verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. . . ."

*State v. Moore, ante* p. 347, 352, 411 N.W.2d 345, 350 (1987).

"As used in § 39-669.07, the phrase 'under the influence of alcoholic liquor' means after the ingestion of alcohol in an amount sufficient to impair to any appreciable degree the ability to operate a motor vehicle in a prudent and cautious manner." *State v. Burling*, 224 Neb. 725, 728, 400 N.W.2d 872, 875 (1987). Sergeant Cavanaugh's testimony supplies ample evidence to support the finding that Thomte was driving his automobile while he was under the influence of alcoholic liquor.

We have previously held that, even discarding the Intoxilyzer breath test results, a police officer's opinion testimony, based on personal observations of the defendant, is sufficient to sustain a finding that the defendant operated a motor vehicle when the defendant was under the influence of alcohol. See, *State v. Burling, supra; State v. Jablonski*, 199 Neb. 341, 258 N.W.2d 918 (1977). That is also our conclusion in this case. Further,

> "[I]n a case tried to the court without a jury, there is a

presumption that the trial court, in reaching its decision, considered only evidence that is competent and relevant, and this court will not overturn such a decision where there is sufficient material, competent, and relevant evidence to sustain the judgment."

*State v. Moore, supra* at 352-53, 411 N.W.2d at 350. Having decided Sergeant Cavanaugh's testimony is sufficient to sustain Thomte's conviction, we find it unnecessary to address Thomte's fourth and fifth assignments of error, relating to the admission of the breath test results as evidence.

The judgment of conviction is supported by sufficient evidence and is affirmed.

AFFIRMED.