STATE OF NEBRASKA, APPELLEE, V. RODNEY L. BRIDGE,
APPELLANT.
452 N.W.2d 542

Filed March 16, 1990.     No. 89-458.

David E. Veath for appellant.

Robert M. Spire, Attorney General, and Donald E. Hyde for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

The defendant, Rodney L. Bridge, was convicted of second-offense driving while under the influence of alcoholic liquor and was sentenced to probation for 1 year, including 48 hours in jail, inpatient treatment at the Veterans' Administration hospital, outpatient counseling, attendance at Alcoholics Anonymous for 3 months, a $500 fine, and court costs. Upon appeal to the district court the judgment was affirmed.

The case was tried to the county court without a jury on stipulated facts. The issue upon appeal is whether the defendant's arrest was illegal and the evidence obtained as a result of the arrest should have been suppressed.

The record shows that on March 4, 1988, Chadron Police Officer Tad Appleby received a communication from Special Services Officer Eaton that Eaton had smelled alcohol on the defendant's breath and was concerned that the defendant was driving while intoxicated. Eaton described the defendant and his vehicle and gave Appleby the defendant's license plate number. Eaton had encountered the defendant at the police station after he had called the defendant to tell him to get his dog out of the pound. Eaton had seen the defendant get into his car and drive off.

Appleby drove to the pound to find the defendant. He saw the defendant drive into the lot at the pound and followed him there. Appleby waited for the defendant to come out of the pound and put his dog in the car before questioning the defendant.

After the defendant put his dog in the car, Appleby asked the

defendant for his name and driver's license. Appleby could smell alcohol on the defendant, so he asked the defendant to perform some field sobriety tests. As a result of these tests Appleby determined that the defendant was under the influence of alcohol and arrested him. ·

After the defendant was read the postarrest form for implied consent, he agreed to take a urine test. The test showed the defendant had a blood alcohol content of .284.

The defendant contends that Appleby's investigatory stop was unconstitutional and that his motion to suppress the results of his urine test should have been sustained.

The conduct of Officer Appleby must be tested by the prohibition of U.S. Const. amend. IV against unreasonable searches and seizures. Neb. Rev. Stat. § 29-829 (Reissue 1989) authorizes a police officer to stop in a public place any person that he or she reasonably suspects has committed, is committing, or is about to commit a crime and to ask that person's name, address, and an explanation of his or her actions. For the detention to be lawful and justifiable, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

"An investigatory stop must be justified by an objective manifestation, based upon the totality of the circumstances, that the person stopped has been, is, or is about to be engaged in criminal activity." *State v. Ege*, 227 Neb. 824, 826, 420 N.W.2d 305, 308 (1988) (citing *United States v. Cortez*, 449 U.S. 411, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981)). The factual basis for the stop need not be the officer's personal observations alone, but may arise from information provided by another person. *Adams v. Williams*, 407 U.S. 143, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972); *State v. Ege, supra*. When the information providing the factual basis for the stop is furnished by another person, it must contain sufficient indicia of reliability. *State v. Ege, supra*. A detailed eyewitness report of a crime by an informant provides its own indicia of reliability because a citizen informant who has personally observed the commission of a crime is presumed to be reliable. *State v. Ege, supra*.

In this case, the evidence establishes that Officer Appleby had a reasonable basis supported by sufficient facts to justify his investigatory stop of the defendant. He knew the informant, who was a fellow employee of the Chadron police. Special Services Officer Eaton described the vehicle and knew where the defendant was headed. The time interval between Eaton's report and Appleby's investigation was short. These are factors to be considered in determining whether the facts known to an officer supply a reasonable basis for an investigatory stop. *State v. Ege, supra.*

In listing the factors to be considered, this court stated in *Ege*:

> "The reliability of the informant varies from an anonymous telephone tipster to a known citizen's face-to-face meeting with police officers. The vehicle description varies from minimal to very detailed. The reported location of the vehicle varies from pinpoint accuracy to a general direction of travel. The observation of traffic violations ranges from none to several. The shorter the time lag, the more likely the stop is valid."

*State v. Ege, supra* at 827, 420 N.W.2d at 308 (quoting *State v. Warren*, 404 N.W.2d 895 (Minn. App. 1987)).

Although neither Eaton nor Appleby observed any erratic driving or other traffic violations by the defendant, the information provided by Eaton was sufficient to justify Appleby's stop. Because the purpose of an investigative stop "is to clarify ambiguous situations, 'even if it was equally probable that the vehicle or its occupants were innocent of any wrongdoing, police must be permitted to act *before* their reasonable belief is verified by escape or fruition of the harm it was their duty to prevent.'" (Emphasis in original.) 1 W. LaFave & J. Israel, Criminal Procedure § 3.8 at 303 (West 1984) (quoting *United States v. Holland*, 510 F.2d 453 (9th Cir. 1975)). The State's interest in preserving evidence and prevention of crime in a case such as this outweighs the defendant's fourth amendment interests. *Wibben v. N.D. State Highway Com'r*, 413 N.W.2d 329 (N.D. 1987). See, also, *State v. Halligan*, 222 Neb. 866, 387 N.W.2d 698 (1986), where a warrantless arrest was justified because the evidence of blood-alcohol content

would be destroyed without immediate action, and *State v. Longa*, 211 Neb. 356, 318 N.W.2d 733 (1982), where an investigatory stop was upheld on the basis of prevention of criminal activity.

In *People v. Willard*, 183 Cal. App. 3d Supp. 5, 228 Cal. Rptr. 895 (1986), the appellate division of the superior court held that a police officer's investigatory stop of the defendant to determine whether he was driving under the influence was legal. In that case, the police officer was driving in his cruiser when another motorist, in the lane next to him, hailed him and informed him that the car behind the motorist was being driven by a "drunk." The witness then drove off. The officer pulled behind the defendant and stopped him solely on the basis of what the driver of the other car had told him. The officer noticed no erratic driving before he pulled the defendant over. Following the stop, the officer noted the defendant had glassy eyes and the odor of alcohol. He gave the defendant field sobriety tests and then arrested the defendant for driving under the influence, following his failure of the tests.

The court determined the motorist was a reliable citizen witness because there was nothing about him that suggested that he was acting from an ulterior motive; he acted openly, exposing himself to identification; and he had been immediately exposed to the potential hazard caused by the defendant's drunk driving. *Id*. The court also determined that the officer had obtained sufficient information from the motorist to justify the stop because of the reliable statement of the motorist that the defendant's car was being driven by a "drunk" and because the officer observed the defendant driving on a public highway. *Id*. The court stated the information of a reliable citizen informant may be accepted as true in order to justify a brief detention to determine whether or not a crime has been committed, is being committed, or is about to be committed. *Id*. The court stated:

> "The possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct. Indeed, the principal function of his investigation is to resolve that very ambiguity and establish whether the activity is in fact

legal or illegal—to 'enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges.' "

*Id.* at 10, 228 Cal. Rptr. at 898 (quoting *In re Tony C.*, 21 Cal. 3d 888, 582 P.2d 957, 148 Cal. Rptr. 366 (1978)).

In this case, the defendant argues the sole basis of Officer Appleby's investigatory stop was Special Services Officer Eaton's report that the defendant smelled of alcohol. The defendant relies on *State v. Johnson*, 215 Neb. 391, 338 N.W.2d 769 (1983), for the proposition that the smell of alcohol alone cannot rise to the required articulable facts which would justify Officer Appleby's investigatory stop.

In *Johnson*, this court said, "The mere odor of alcohol, standing alone, is not sufficient to justify either a lay witness or an expert rendering an opinion as to whether one is intoxicated in violation of law." *Id.* at 395, 338 N.W.2d at 772. However, that statement was made in the context of a trial for drunk driving where the defendant had been convicted of the charge, and the only evidence at trial was the arresting officer's testimony that the defendant smelled of alcohol. There was no evidence that the officer conducted any field sobriety tests or that the defendant failed to pass such tests. The defendant had been stopped for operating a motor vehicle with an improper registration. On questioning by the police officer, the defendant began yelling. It was then that the police officer arrested the defendant for driving while intoxicated because the defendant smelled of alcohol.

The defendant's reliance on *Johnson* is misplaced. In this case, the defendant was stopped on a reasonably articulated suspicion that he was driving while intoxicated. The evidence shows that Special Services Officer Eaton had smelled the odor of alcohol on the defendant, had observed him get into his car and drive, and was concerned that he was driving while intoxicated. These facts as communicated to Officer Appleby, as well as Appleby's own observation of the defendant driving, were sufficient to justify Officer Appleby's detention of the defendant in order to determine whether or not the defendant was engaged in the suspected criminal activity of driving while under the influence of alcohol.

The investigatory stop of the defendant was justified, and upon his failure to successfully perform the field sobriety tests, his arrest was legal. The judgment is affirmed.

AFFIRMED.

GRANT, J., dissenting.

I respectfully dissent. In the county court, defendant filed a motion to suppress the evidence of the test of his urine on the grounds that that evidence was obtained as the result of an unconstitutional search and seizure following an illegal arrest. The county judge granted defendant's motion to suppress. Pursuant to Neb. Rev. Stat. § 29-2317 (Reissue 1989), the State appealed the county court's order of suppression to the district court for Dawes County, where the county court order was reversed and the cause remanded to the county court "for further proceedings." On remand, the county court followed the order of the reviewing district court, denied defendant's motion for suppression without a further hearing, received the same evidence over defendant's objection, and found defendant guilty.

Our law is settled that in the appellate review of an order suppressing evidence, "the Supreme Court will uphold a trial court's findings of fact unless those findings are clearly wrong." *State v. Harms*, 233 Neb. 882, 884, 449 N.W.2d 1, 3 (1989). I see no reason why a district court acting as an appellate court should apply any different rule in reviewing orders of suppression in a county court.

In reviewing the order of the county court suppressing the evidence, the district court did not give appropriate weight to the implicit findings supporting this order of the county court. I cannot see how the county court's findings could be determined to be clearly wrong. Testimony of the arresting officer shows that the only evidence furnished to the officer was that an animal control officer "had contact with Mr. Bridge and that Mr. Bridge had smelled of alcohol" and that the animal control officer "was concerned that he [defendant] might be intoxicated, and after their conversation he had seen Mr. Bridge get into the driver's side of the vehicle and drive off." The animal control officer apparently talked to defendant and saw defendant drive off, but there is not one shred of evidence that

the animal control officer told the arresting officer that defendant had slurred speech, that defendant staggered as he walked and entered the car, or that defendant's driving was anything but normal.

Similarly, the arresting officer saw the car defendant was driving "turn off of [U.S. Highway] 20 onto [U.S. Highway] 385" and saw the car "[turn] off into the vet clinic." When the officer first saw defendant, the officer was going the opposite direction and had to turn the police car around and "had to wait a little while because my car was a little forward and there was traffic and I didn't want to cause an accident." The officer drove into the clinic area and saw defendant walk either into or out of the clinic. The officer did not testify as to any erratic walking or driving, although he had ample opportunity to observe either or both. Apparently defendant operated his car without any problem in the traffic that concerned the arresting officer.

An arresting officer must have " 'a particularized and objective basis for suspecting the person stopped of criminal activity.' " *State v. Daniels*, 220 Neb. 480, 482, 370 N.W.2d 179, 181 (1985), quoted with approval in *State v. Kuil*, 231 Neb. 62, 434 N.W.2d 700 (1989). In the *Daniels* case, a police officer saw defendant's car run a stop sign, make a wide-angle turn, and then drive erratically down a road. In the *Kuil* case, the officer saw Kuil fail to stop at a stop sign; drive into a dead end area; spin his truck around, kicking up dust and gravel; and then fishtail as he drove away.

As we held in *State v. Ege*, 227 Neb. 824, 826, 420 N.W.2d 305, 307-08 (1988), quoting from *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), " 'the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' "

The record before us shows that the *only* fact the arresting officer or his informant articulated was that defendant had the odor of alcohol on his breath. The *only* rational inference from that fact is that defendant had had a drink or drinks. The officer and his informant had the opportunity to hear slurred speech and the opportunity to see erratic driving or walking,

and did not testify, or refer, to any such activity.

I feel the stop by the officer was illegal. I think the district court, on the appeal from county court to district court on the suppression issue, erred in determining that the findings of the trial court (the county court) were "clearly wrong" and in reversing the county court's order of suppression, and I further feel that the receiving of any evidence flowing from the illegal stop was error.

I would reverse and dismiss.

CAPORALE and SHANAHAN, JJ., join in this dissent.