THE STATE OF NEVADA, Appellant, v. DIETRICH
SONNENFELD, Respondent.

No. 28729

May 28, 1998                                    958 P.2d 1215

*Frankie Sue Del Papa,* Attorney General, Carson City;
*Richard A. Gammick,* District Attorney, and *Terrence P.
McCarthy,* Deputy District Attorney, Washoe County, for Appellant.

*Michael R. Specchio,* Public Defender, and *John Malone* and
*John Reese Petty,* Deputy Public Defenders, Washoe County, for
Respondent.

## OPINION

*Per Curiam:*

Respondent, Dietrich Sonnenfeld, was stopped and subsequently arrested for driving while intoxicated after police
received a tip from a bartender regarding Sonnenfeld's apparently
inebriated state. The district court granted Sonnenfeld's motion to
suppress all evidence obtained from his initial detention on the
grounds that the bartender's tip was insufficient to create reasonable suspicion for a sheriff's deputy to pull him over for driving
under the influence. For the reasons set forth below, we reverse
the district court's order.

## FACTS

On March 10, 1996, Deputy Sheriff Douglas Brady was on routine patrol in Reno when he received a call from dispatch that a person identifying herself as a bartender at the Adobe Bar called to complain of a disorderly, intoxicated person who refused to leave. Deputy Brady responded to this call and headed in the direction of the Adobe Bar. En route, Brady was advised by a dispatcher that the bartender called the police a second time to report that the inebriated patron drove away from the bar in a beige or yellow car with California license plates and a large roof rack. The bartender also provided police with a detailed description of the allegedly intoxicated patron and indicated the direction in which his car travelled away from the bar.

Acting on this information, Deputy Brady continued south on Sun Valley Drive, past the Adobe Bar, where he eventually caught sight of a yellow or beige Volkswagon with a roof rack and California license plates bearing numbers matching those given him by the dispatcher. The deputy pulled up behind the vehicle and activated the flashing emergency lights on his patrol vehicle.

The driver of the vehicle did not notice or chose to disregard the flashing lights and continued driving, bypassing several convenient areas to pull over. According to Deputy Brady, the car did not speed up or otherwise attempt to elude the officer. Instead, the driver seemed to ignore the presence of the patrol car. The driver eventually turned left, traversed a freeway overpass, entered an apartment complex and finally stopped near a fence.

The deputy stopped his patrol vehicle and approached the car. The driver of the vehicle, Dietrich Sonnenfeld, also exited his vehicle. The deputy immediately noticed indicia of intoxication: Sonnenfeld lost his balance and grabbed his car door for support, he smelled of alcohol, and he appeared surprised to see a peace officer. At a preliminary hearing, Deputy Brady testified that before he could question Sonnenfeld, Sonnenfeld tried to strike him; Deputy Perry arrived and assisted Deputy Brady in subduing Sonnenfeld.

Without conducting field sobriety tests, the officers arrested Sonnenfeld for driving under the influence. A blood test later confirmed that Sonnenfeld's blood alcohol level of .15 percent exceeded the legal limit.

On May 9, 1996, Sonnenfeld filed a motion in district court to suppress all evidence flowing from his initial detention. In that motion, Sonnenfeld argued that because Deputy Brady was operating only on an uncorroborated tip, he did not have the requisite reasonable suspicion to pull Sonnenfeld over. Following a hearing on the matter, the district court issued a written order grant-

ing the motion to suppress. The state thereafter filed this timely appeal.

## DISCUSSION

The state argues that the district court erred in granting Sonnenfeld's motion to suppress. Sonnenfeld argues that the officer lacked reasonable suspicion that Sonnenfeld was driving under the influence and, therefore, his subsequent detention was unconstitutional. According to Sonnenfeld, then, all evidence flowing from that detention must be excluded at his trial.

NRS 171.123(1) authorizes a peace officer to "detain any person whom the officer encounters under circumstances which reasonably indicate that the person has committed or is about to commit a crime." In discussing these provisions, this court has explained that:

> Pursuant to this standard, in order to justify a stop and detention, the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, lead the officer reasonably to conclude, in light of his experience, that criminal activity may be afoot.

Stuart v. State, 94 Nev. 721, 722, 587 P.2d 33, 34 (1978) (citing Terry v. Ohio, 592 U.S. 1 (1968), and Jackson v. State, 90 Nev. 266, 523 P.2d 850 (1974)).

In *Terry,* the United States Supreme Court articulated a two-prong test for determining whether an investigative detention passes constitutional muster:

> [In] determining whether the seizure and search were "reasonable" our inquiry is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.

*Terry,* 592 U.S. at 19-20.

In Alabama v. White, 496 U.S. 325, 332 (1990), the Supreme Court held that an officer may make a traffic stop based upon an anonymous tip which was corroborated in some detail, even though the entirety of the information was not sufficient to justify an arrest. In *White,* an anonymous citizen informed the police that the defendant would leave a certain place at a designated time, driving a particular car heading to a specified location carrying cocaine. *Id.* at 326. The Court held that independent corroboration of significant aspects of the citizens's predictions imparted sufficient reliability to justify a traffic stop. *See id.* at 332; *accord* United States v. Alvarez, 899 F.2d 833 (9th Cir.

1990); United States v. Rodriguez, 835 F.2d 1090 (5th Cir. 1988).

Other jurisdictions addressing this issue have held that an anonymous tip, possessing a sufficient degree of reliability, can create reasonable suspicion justifying a valid investigatory stop. In State v. Lownes, 499 N.W.2d 896, 898 (S.D. 1993), an anonymous caller informed a state police dispatcher that an individual was driving under the influence of some intoxicating substance. The caller relayed specific information concerning the individual, including: (1) a description of his distinctive motorcycle, (2) his name, (3) the location from which the motorcycle departed, and (4) an expected destination. *Id.* at 898. The dispatcher then relayed this information to a state trooper who stopped a motorcycle driven by a person matching the informant's description. *Id.* The state trooper acted solely on the information relayed to him by the dispatcher. *Id.* The *Lownes* court held that after the trooper verified aspects of the caller's tip, i.e., that a man driving a motorcycle matching the description was proceeding on the indicated highway in the direction predicted, there existed adequate reasonable suspicion to justify a *Terry* stop. *Id.* at 900.

A California case, People v. Willard, 228 Cal. Rptr. 895 (Ct. App. 1986), involved similar facts. There, a motorist hailed a police officer on the street, informing him that the car behind the motorist appeared to be driven by a "drunk." *Id.* at 896. The officer followed the car the motorist indicated and effected a traffic stop. *Id.* The officer did not observe erratic driving and testified that he made the stop solely on the basis of the motorist's accusation. *Id.*

, The *Willard* court first held that the informing motorist was a reliable citizen witness, noting the exigency of the circumstances and the apparent lack of an ulterior motive. *Id.* The court also held that because the officer possessed reliable information that criminal activity was in progress and that the defendant was connected with that activity, the officer possessed the requisite reasonable suspicion to conduct an investigatory stop. *Id.* at 898.

The facts in the instant matter are substantially similar to those in *Lownes* and *Willard*. Deputy Brady had first received a call that an intoxicated patron was causing a disturbance at the Adobe Bar and was refusing to leave. Then, he received a report indicating that this supposed inebriate left the bar and was driving a vehicle. The bartender, who is presumably in a reasonable position to evaluate intoxication, provided the dispatcher with several specific details: the color and license plate number of the vehicle the person was driving, the fact that the car had a roof rack and the direction in which the car travelled away from the bar. Deputy

Brady was able, almost immediately, to verify these details upon encountering Sonnenfeld's vehicle.

We conclude, as did the courts in *Lownes* and *Willard,* that these details sufficiently corroborated the bartender's report and, therefore, the deputy possessed a reasonable suspicion that Sonnenfeld was driving while intoxicated. Thus, we conclude that the deputy's investigatory stop was justified and that the district court erred in granting Sonnenfeld's motion to suppress.

Having reached the foregoing conclusions, we reverse the district court's order and remand this case for further proceedings.