562 P.2d 720

**STATE of Arizona, Appellee,**

v.

**David Harold SUSKO, Appellant.**

No. 3630.

Supreme Court of Arizona,
In Banc.

March 9, 1977.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III, Chief Counsel, Crane McClennen, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by H. Allen Gerhardt, Jr., Deputy Public Defender, Phoenix, for appellant.

STRUCKMEYER, Vice Chief Justice.

The appellant, David Harold Susko, was convicted of forgery, a violation of A.R.S. § 13–421, was sentenced to serve not less than three nor more than five years in the state prison, and appeals. Affirmed.

Appellant waived a jury trial and submitted his case for decision on a police report and the transcript of his preliminary hearing. These records establish that on June 2, 1975, at approximately 4:00 p. m., two Department of Public Safety officers halted appellant as he rode a motorcycle near 52nd Avenue and Ocotillo, in Glendale, Arizona. He was stopped because he was a white, "hippie type" male in a totally Mexican-American neighborhood known for its many drug problems. His motorcycle had no license plate. One of the officers testified that he and the other officer were assigned to working narcotics and had probably stopped one hundred "hippie type", white males in that area, all of whom were drug addicts with the exception of one or two. When the appellant was asked for his driver's license, he produced as his only identification the title to his motorcycle, stating that this was all he had.

One of the officers, however, noticed a wallet protruding from appellant's hip pocket. The officer took it out of appellant's pocket and examined the wallet. Inside, he found a Master Charge credit card and other identification bearing the name of George M. Kintner, and some bank checks which appellant told the officers he had found. The officers ran a radio check on the credit card and were informed that it had been reported as missing. The officers then contacted George M. Kintner, who told them that the wallet had been stolen from his truck. Appellant was then formally arrested for possession of stolen property and he was advised of his rights. As the officers drove to police headquarters with appellant, they were informed by radio that the credit card found on the appellant had been used as identification in an attempt to cash a check earlier that day at a food store located at 33rd Avenue and Indian School Road.

Officer Tom Rogers, one of the arresting officers, testified at the preliminary hearing:

"Q. After you gave him his rights, at that time did you have a conversation with him concerning the checks?

A. Yes, we did. We were on the way to the Fry's Food Store at 33rd Avenue and Indian School and Mr. Susko stated that there wasn't any need to go by there, that he had cashed the check there earlier in the day. And he had $197 in cash on him. And he stated to me that part of the money was from a check that he cashed that day at Fry's Store on 35th and Northern for $50.00.

Q. Did he say anything about the checks—did he say anything about the checks themselves, whether he knew—or about his knowledge of the checks other than he had found them?

A. He stated that he'd cashed several of them he thought. Well, what he said is

that he had thought he had cashed about $1,400 worth.

Q.  Did he say anything about whether or not these were bad or good?

A.  He stated they didn't belong to him."

As a result of the information contained in appellant's confession, the officers contacted the food store at 35th Avenue and Northern and asked about any checks cashed there bearing the name George M. Kintner.  They were informed that an employee, Pat Hoffa, had cashed such a check and that she was available for a possible identification.  Later that evening, Officer Rogers prepared a photo lineup of twelve persons, including the appellant, and showed these to Hoffa.  She identified the appellant as the man who had cashed a $50 check at the store under the name George M. Kintner.  Appellant was charged with and convicted of forgery in connection with this check.

Prior to trial, appellant moved to suppress all the evidence as fruit of an illegal search and seizure.  The trial judge ruled that the police had obtained the wallet illegally and excluded it and its contents from evidence, but did not exclude appellant's confession and the subsequent identification by Hoffa.  Appellant urges that the court erred in not excluding the confession and identification.  But we think the wallet was not the product of an illegal search and its contents and the confession and identification were all competent evidence.

■  This Court has held that in Arizona there is no statutory right to stop a driver of a motor vehicle to ascertain whether the driver is violating the law by failing to have his operator's license in his possession or the certificate of registration to his motor vehicle.  *State v. Ochoa*, 112 Ariz. 582, 584, 544 P.2d 1097 (1976).  We also said that when the driver of a motor vehicle is stopped on a public highway his freedom is restrained and he is "seized" within the meaning of the Fourth Amendment to the Constitution of the United States.  *Id.* 112 Ariz. at 584, 544 P.2d 1097.  The restraint of movement is, at least as a minimum, a technical arrest, although in a larger sense it may not be considered as a full custody arrest, because it may be followed later only by the issuance of a traffic citation.

■  In the instant case, appellant's motorcycle did not have a license (number) plate as required by law, a violation of A.R.S. § 28–308.  He was, therefore, at the time the officers stopped him, subject to arrest.  Thereafter, when he was asked to show his driver's license and could not or would not, he was in violation of A.R.S. § 28–423, which requires that every person shall have his license in his immediate possession at all times when operating a motor vehicle and shall display it upon demand by a police officer.

■  A search of the person of a suspect which follows a lawful arrest does not violate the Fourth Amendment of the Constitution of the United States.  *Gustafson v. Florida*, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973); *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).  Since *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), the validity of a search as an incident to a lawful arrest has been recognized:

> "What then is the present case?  Before answering that inquiry specifically, it may be well by a process of exclusion to state what it is not.  It is not an assertion of the right on the part of the Government, always recognized under English and American law, to search the person of the accused when legally arrested to discover and seize the fruits or evidences of crime."  232 U.S. at 392, 34 S.Ct. at 344.

The examination of appellant's wallet to determine his identity following his arrest was within permissible constitutional limits of police action.

■  Appellant also complains of a conflict between the minute entry record of the appellant's sentencing, which discloses that his sentence was to run from the date of sentencing, November 24, 1975, and the reporter's transcript of the sentencing, which indicates that the trial judge ordered the sentence to run from June 2, 1975, the

date of appellant's arrest. We said in *State v. Wheeler*, 108 Ariz. 338, 342, 498 P.2d 205 (1972), that when there is a conflict between the minutes and the reporter's transcript, the circumstances of the particular case determine which shall govern. Although the appellant was released for part of the time between his arrest and sentencing, 53 days were spent in jail. We think the record supports a finding that the trial judge intended to give the appellant credit on his sentence from the time he was arrested.

Judgment affirmed, appellant's sentence to commence on June 2, 1975.

CAMERON, C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.