# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1463

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| William T. Felts, Jr., | * | |
| | * | **[UNPUBLISHED]** |
| Defendant-Appellant. | * | |

_____

Submitted: October 7, 2002

Filed: November 29, 2002

_____

Before MCMILLIAN, LAY, and RILEY, Circuit Judges.

_____

PER CURIAM.

William T. Felts entered a conditional plea of guilty to possessing more than five kilograms of cocaine with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1). Felts was sentenced to 108 months imprisonment and five years of supervised release. Prior to his plea, the district court[1] denied Felts' Motions to Suppress. Under his conditional plea, Felts maintained his right to appeal. We affirm.

_____

[1]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

I.

On March 21, 2001, two Nebraska State Troopers were proceeding eastbound on Interstate 80 near Kearney, Nebraska when they noticed a Ford Excursion drive onto the right white shoulder line, cross the line, then drive on the right side shoulder for a distance of four to six car lengths. The troopers followed the vehicle for six miles and, during this time, observed several similar incidents including one final incident where the vehicle crossed the center line into the passing lane, moved completely across the lane, crossed the yellow left side shoulder line, and drove outside the yellow line for approximately 100 feet before returning to its original lane. At this time, the troopers signaled for the vehicle to stop.

Trooper Gregory Goltz testified that Felts, the driver of the Ford Excursion, had committed three traffic violations: driving on the shoulder, careless driving, and driving left of center. He testified it was his intent during the traffic stop to issue Felts a warning and determine whether he was impaired. Following his initial conversation with Felts, Trooper Goltz brought Felts back to his patrol car while he conducted computer checks of the vehicle and a criminal background check of the driver. At this time, Trooper Andrew Duis led his drug detection dog on a walkaround of the Ford. The dog "indicated" near the rear passenger side. Felts then gave permission to search the vehicle. Upon conducting the search, Trooper Duis found over 300 kilograms of cocaine concealed in U-Haul boxes in the rear of the Ford.

Felts alleges the stop of his vehicle was not justified under Nebraska law and violated the Fourth Amendment of the United States Constitution. He further alleges that the extended length of the stop was not justified by reasonable suspicion. As such, he urges that his grant of consent to search the vehicle is fruit of the poisonous tree.

## II.

Felts' first argument on appeal is that the traffic stop itself was not justified under Nebraska law. Magistrate Judge Thalken held that the troopers had sufficient cause to the stop the vehicle based on Felts' violation of Nebraska's careless driving statute. See Neb. Rev. Stat. § 60-6,212 ("Any person who drives any motor vehicle in this state carelessly or without due caution so as to endanger a person or property shall be guilty of careless driving."). Magistrate Judge Thalken found that the troopers' observations of the Ford crossing over lane lines and swerving in lanes over the course of six miles provided an objective basis for the troopers' reasonable belief that Nebraska statutes had been violated, or that the driver might be impaired. Once the troopers had such a reasonable belief, they could legally stop Felts to cite or warn him, and to further investigate his capacity to safely operate his vehicle. See Nebraska v. Frieze, 525 N.W.2d 646, 651 (Neb. Ct. App. 1994) ("It is well-settled in Nebraska that an officer observing a traffic violation or driving behaviors which reasonably indicate that the driver may be operating the vehicle while under the influence may make an investigatory stop of the vehicle."); Nebraska v. Bowley, 442 N.W.2d 215, 217-18 (Neb. 1989) ("[A] vehicle weaving in its own lane of traffic provides an articulable basis or reasonable suspicion for stopping a vehicle for investigation regarding the driver's condition in operating the weaving vehicle.") (citing Nebraska v. Thomte, 413 N.W.2d 916 (Neb. 1987)).

Felts concedes that a law enforcement officer who observes a traffic violation has probable cause to stop the vehicle. He argues, however, that he did not commit a traffic violation by crossing over lane lines because he did not present any threat to other traffic. Felts argues that the Nebraska careless driving statute is intended to penalize only the operation of a motor vehicle that endangers persons or property. He asserts that the Government did not produce any evidence that his driving endangered persons or property.

We disagree. This court has held that anytime a law enforcement officer observes a traffic offense of any magnitude, he has probable cause to make a traffic stop. United States v. Bloomfield, 40 F.3d 910, 915 (8th Cir. 1994) (en banc) ("Any traffic violation, however minor, provides probable cause for a traffic stop."). See also United States v. Cummins, 920 F.2d 498, 500 (8th Cir. 1990) (citing Pennsylvania v. Mimms, 434 U.S. 106 (1977)). Here, the troopers' stop of Felts was not based on only one observation. Rather, it was based on the totality of the troopers' observations, including multiple occurrences over a six-mile stretch of road. These occurrences demonstrated to the troopers that Felts was driving "without due caution so as to endanger person or property." At the very least, these observations gave the troopers cause to investigate whether the driver was operating the vehicle in an impaired condition. Bowley, 442 N.W.2d at 218. Under Nebraska law, the troopers had a legitimate reason to stop Felts' vehicle and pursue further investigation.

III.

Felts' second assertion on appeal regards the length of his detention following the initial traffic stop. Trooper Goltz testified that he told his partner he would not bring Felts back to the patrol car unless he became suspicious about the driver or the vehicle. If he became suspicious about either, he would ask the driver to come with him to the police vehicle. At that time, Trooper Duis was to deploy the police service dog to walk around the vehicle. Felts argues this testimony demonstrates that at the time Trooper Goltz brought him back to the police vehicle, Goltz had already established reasonable suspicion of criminal activity based on his initial interview with Felts. Felts claims the information he gave Trooper Goltz in the initial interview was consistent with information that would be given by innocent travelers. As such, he urges that Goltz's suspicion was no more than a "hunch" and, therefore, was not based on reasonable articulable facts. Further, Felts argues that at the time he was brought back to the police vehicle, the routine tasks of a traffic stop had been

completed. He also asserts that any further detention violated his rights under the Fourth Amendment of the United States Constitution.

We disagree. After having made a valid traffic stop, an officer may detain a driver while completing a number of routine but somewhat time-consuming tasks, such as computerized checks of the driver's license and criminal history. United States v. $404,905.00 in U.S. Currency, 182 F.3d 643, 647 (8th Cir. 1999) (citation omitted). An officer may also take time to ask questions regarding the driver's destination and the purpose of the trip, and may also ask for permission to search the vehicle and act on any information that is volunteered through this questioning. $404,905.00, 182 F.3d at 647.

The Government asserts that the detention of Felts in the patrol car while Trooper Goltz conducted computer checks was a continuation of the lawful traffic stop. We agree. Furthermore, it was during this time that Trooper Duis deployed the drug detection dog around the Ford. Once the dog alerted to the odor of a controlled substance, the troopers had probable cause to search the vehicle. This is true whether or not Felts gave his consent.

IV.

For the foregoing reasons, we affirm the judgments of the district court.

AFFIRMED.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

5